## ATLANTIC COAST LINE RAILROAD CO. v. O'NEAL.

No. 10233. DECEMBER 14, 1934. REHEARING DENIED FEBRUARY 20, 1935.

*Wilson, Bennett & Pedrick* and *S. F. Memory,* for plaintiff in error.

*F. M. Oliver* and *Parker & Parker,* contra.

HUTCHESON, Justice. O'Neal filed his petition against the Atlantic Coast Line Railroad Company, seeking damages for the death of his eight year old son. A general demurrer to the petition was overruled by the trial court. The Court of Appeals rendered its decision, holding that the petition was sufficient as against general demurrer, and affirming the judgment of the lower court. 48 *Ga. App.* 706 (172 S. E. 740). The case is before this court by writ of certiorari. The Court of Appeals laid down the following ruling: "Under the facts of this case it was a question for the jury to determine whether the defendant was negligent in piling logs and crossties adjacent to a public street in a city in such a manner as to render them dangerous and liable to become dislodged when children played upon them, where it appeared that one of its servants was actually present when a child was injured, knew of the unsafe and dangerous condition of the pile of logs, and failed to warn the child of the danger or keep him away from the pile of logs." In the opinion the court said: "It is alleged that the logs were negligently and dangerously piled adjacent to a public street, that an agent or servant of the defendant was actually present when

the plaintiff's child was playing upon these logs, actually saw him playing thereon, knew of the unsafe and dangerous condition of the logs, and failed to warn said child or keep him from playing upon the logs, and as a result thereof the child was killed by the logs rolling upon him. In these circumstances the petition set forth a cause of action upon this theory."

We think that the Court of Appeals was correct in holding that the allegations of the petition were insufficient to set out a cause of action upon the theory of "attractive nuisance." An attractive nuisance is maintained where an owner keeps premises in such a state or condition as to lure and attract children to play upon or around some dangerous instrumentality; and of course, where such a state of facts exists, the owner or creator of such "attractive nuisance" owes a higher measure of duty to the public generally than it does where this principle is not applicable. *Ferguson* v. *Columbus & Rome Railway*, 75 *Ga.* 637. There are no allegations in the petition sufficient to show wanton or wilful negligence, or that defendant had knowingly allowed a hidden peril to exist. *Southern Cotton-Oil Co.* v. *Pierce*, 145 *Ga.* 130 (88 S. E. 672). It is usually wilful or wanton not to exercise ordinary care to prevent injury to a person who is actually known to be or reasonably expected to be *within the range of a dangerous act being done*. *Ashworth* v. *Southern Railway Co.*, 116 *Ga.* 635-638 (43 S. E. 36, 59 L. R. A. 592). But the petition nowhere alleges that a dangerous act was being done. It alleges that logs were piled upon the premises in a dangerous manner; but it must be borne in mind that the condition of the logs would not injure or harm any one without the intervention of some active force. This phase of liability or nonliability on the part of the owner has been discussed in many jurisdictions. In Hannan v. Ehrlich, 102 Ohio St. 176 (131 N. E. 504), it was held that "Greater care and caution should be exercised to prevent injuries to children upon premises where dangerous active operations are carried on than upon premises containing a visibly dangerous statical condition." It was also said "A well-defined distinction runs through the cases, between injuries caused by a dangerous statical condition and premises where dangerous active operations are being carried on." From *Savannah &c. Railway Co.* v. *Beavers*, 113 *Ga.* 398, 404 (39 S. E. 82, 52 L. R. A. 314) : "If the child, upon entering on the premises, is hurt

by the 'active negligence' of the owner in bringing force to bear upon him, it may well be that the negligence of the parent in failing to restrain the child's entrance does not bar the child's recovery for the force thus brought to bear upon him after his entrance. But it is going far beyond this to say that the child can recover for harm sustained by him through the condition of the premises, without the immediate intervention of any human agency save his own." Where no permission is given, but there is a habit on the part of individuals or the public of traveling over the property of another, and nothing is done to prevent it, that does not modify or change the legal rights or obligations of either the public or the owner of the premises. By such use the public are not tacitly licensed to go upon the property, and the consent of the owner to this use is not implied; but the fact that they do go there enters into the situation as it is known to the owner, and affects the caution and amount of care required. Hopkins on Personal Injuries, 142; *Ashworth* v. *Southern Railway Co.*, supra. The authorities differ widely both as to when a person is to be treated as a licensee and as to the duty which the owner owes to such a person. A person is not a licensee unless he has permission, express or implied, to go upon the property of another, and the authorities are not agreed as to whether such permission may be implied by habitual use of property or general custom in reference thereto. The general rule is that a person who owns or controls property owes no duty to a trespasser upon it, except not to wilfully or recklessly injure him; and this rule applies alike to adults and to children of tender years. *Nashville, Chattanooga & St. Louis Railway Co.* v. *Priest,* 117 *Ga.* 767 (45 S. E. 35). Persons going on such premises take them as they find them, and must look out for their own safety, subject, of course, to the rule that the owner will not be held blameless if he injures them through negligence after discovering them on his premises, or if he inflicts upon them a wanton or malicious injury. 2 Thomp. Neg. § 1705. To the licensee no duty arises of keeping the usual condition of the premises up to any given standard of safety, except that they must not contain pitfalls, mantraps, and other things of that character. *McCall* v. *McCallie,* 48 *Ga. App.* 99 (9) (171 S. E. 843).

Under the facts alleged in the present case, did the company owe to the child the duty it would owe to a trespasser, a licensee, or an

invitee? We do not think that they could be held to support the theory applicable to an invitee. "Where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises," is the descriptive language used in the Code (1910), § 4420. In the present case no contention is made that there was any express invitation, and the allegations do not authorize the inference that there was an implied invitation. So that, if we construe the petition in its most favorable light toward the petitioner, the child could have been no more than a licensee. "But there is a clear distinction between the duty owing to such an invitee and the duty owing to a mere licensee. An owner owes to a licensee no duty as to the condition of the premises, unless imposed by statute, save that he should not knowingly let him run upon a hidden peril or wilfully cause him harm; while to one invited he is under obligation for reasonable security for the purposes of the invitation." *Crossgrove* v. *A. C. L. Railroad Co.,* 30 *Ga. App.* 462 (118 S. E. 694). The allegations of negligence, when considered in connection with the whole petition, do not set out an invitation, express or implied; there are not sufficient allegations in the petition to show that the agent or employee of the company was under a duty to issue warning to the child; and we are constrained to the view that the petition sets out no cause of action against the defendant, and that the Court of Appeals erred in affirming the judgment overruling the demurrer to the petition.

*Judgment reversed.* *All the Justices concur, except Russell, C. J., and Bell, J., who dissent.*